Good morning, Your Honors. Wallace, Salkins, and Thomas. If it pleases the Court, there are three issues that we really need to look at in this case. The first one is, is the government correct in saying that factually the LAD did not make an application for asylum or withholding? We say they're not correct, and page 550 will be illustrative of that. The second point is, is the LAD technically eligible for asylum? And we would say, yes he is. A one-year rule does not apply to minors, and we can go through the analysis after that. The third point is, was due process denied when the issue of lack of application was raised to respond at the BIA level, no opportunity to rebut? The first point, on page 550, in this copy, on page 3 of the application, at the bottom of the page — Excuse me, counsel, could you give me the excerpt of record page you're referring to? Page 550. 550? Yes. The last field on that page, 22, states — now, this form is just a little outdated. They're now using a different form in immigration courts. But on this particular one, it says, if the U.S. — if in the U.S., referring to the child, is this person to be included in this application? And the box marked, yes, is checked. Now, what does that mean? Is there anything in the application instructions that say that, well, the mother is the primary and the son is only — would only be a derivative? What question number on that page are you referring to? Twenty-two. Twenty-two? Yes. The bottom — well, okay, it's the bottom field. All right. Does the — does this mean he's only derivative? Does this mean he's making the application in his own right? Does this — is he somehow secondary to the mother's application and the mother's presentation of evidence? We — we believe not, because there's — there's nothing in the — in the instructions to the — to the application or instructions from the judge to the mother that, listen, you need to have a separate application if you want to assert withholding for the — for this child of yours. Asylum, you mean. Asylum or withholding. Okay. Because asylum is — is — Isn't she asking just for asylum in this application? No, she's asking — the top of the application, page one, is asylum and withholding of removal. So asylum and withholding. And your position is — it's been briefed as if the son was a derivative beneficiary under asylum. So I've missed this point, and maybe I want to make sure I understand your position. Your position is that when a person checks yes at number 22, that's the same as a completely separate petition on the son's part for asylum and withholding. And we should treat it as separate from the mother's? Not necessarily separate, but the fact that he has made an application. It's — Separate. His application included with his mother's. No, not necessarily separate, but — I don't get the difference between that and derivative. Is it something different from derivative? Derivative normally is a term that's used to say that the son gets the benefit because the mother was the one that was persecuted. Right. Right along benefits. Right. Okay. Exactly. We're saying, no, not necessarily. He's made an application in his own right. You're saying it's a joint application? It's a joint application. A joint and derivative application. Precisely. So at the time — I've never seen this before, and so I want to know where we're going, and I've never seen one — this argument raised before. At the time the mother withdraws asylum, in which — that's the only derivative right the son has. The I.J. has to say, this is a separate petition for the son also, so I have to — I can't just I believe the judge, the I.J., has a duty to assure that that procedural — that that bit of procedure is accomplished, yes. So at that time, was he asked to do that by the petitioner or petitioner's counsel? I do not believe so, Your Honor. I did not see that in the record. No. Because the issue, it wasn't raised at that level. It was — the son was in the courtroom with the mother, with his own A number, sitting at the table. It was — it was assumed that he was asserting his rights as well. So I haven't heard this raised before. This is entirely new. So we can — we can say that a derivative petitioner has — is making a petitioner in his own right, even though his mother, who's responsible for him, withdraws. It doesn't withdraw his. He has an individual right over and above the right of his mother. That's been my experience in — in I.J. courts. And what's — is there a case on this that that right is separate? There's no case. None that I have found, Your Honor. Nothing in the I.J., nothing in the reports, nothing that would have advised the I.J. that this is a separate right that he had to deal with. This is first impression, up and down. Very likely, Your Honor. The only case I found anywhere remotely on this issue was that the I.J. has a duty to explain to mother her roles in the proceedings. That would be Jacinto v. Ins, the Ninth Circuit case in 2000. The I.J. inadequately — inadequately explained the hearing procedures and — and failed to adequately advise the respondent of her various roles. Now, on that one, the facts are just a little bit different. Their roles as a witness, as a — as an affirmative witness, as opposed to just a responding — responsive to the — to the hearing procedures, the I.J. has some responsibility to assure that procedural requirements are met. If there were really a procedural requirement that the son has put in a separate piece of paper with his name at the top of page one, it was the duty of the I.J. to say, we need something here. Was this issue raised before the board — before the board? It — the issue was raised in — in just a little different language when I said that the — I believe it was bullet point two, did the boy have a right to asylum in his own right? Yeah. I believe it was raised. But not raised as to the responsibility of the I.J. to ferret that out? No, Your Honor. No, I — I did not — That hasn't been exhausted. I did not exhaust that, no. So your second issue is the legal — regardless of the facts, whether or not minors are subject to the one-year rule. Yeah, I — it is my understanding that they are not subject to the one-year rule, that they — at least until majority, that they have the right to — to raise the issue. So he could go back down and petition? Not if — not if they're going to raise — they raised judicata, that we've already talked about this in court, and — and you're going to have to try to reopen, and then it's subject to the discretion of the I.J. whether or not to — to reopen. If the I.J. treated him only as a derivative, and he should have been treated otherwise — I believe so. — and he has still in his minority, can he raise that on his own in a new petition? If he's allowed a new petition. My — the way I read the facts here is that he's already made a petition, and he's already asserted the merits of the case through his mother, and his mother's testimony, and his father's testimony. So is — is your request that we send it back to the Board and say, this is an issue that has not been exhausted? My request, at the very least, Your Honor, it — with the issues that we have here, this should be remanded with the instructions to — for a grant, because the — the analysis that I've prepared, that the — the child was eligible for asylum. The mother's grant of withholding has — asylum is a lesser-included burden of proof, if you will. So if she were eligible for withholding, then she — and but for the one-year rule, she would have been eligible for asylum. Then the son is eligible for asylum, for arguments that I would like to make, membership of a political — or of a particular social group. Two bases he's eligible for asylum. One is a member of the family, and two, as an individual, he finds himself to be persecuted. Uh-huh. And my time is done. Okay. We'll hear from the Governor at this time. It's a good argument. I enjoyed it. Thank you. May it please the Court, Donald Kuvion, for a respondent. Your Honors, it's hard to know where to begin because so much has been proffered to the Court that will not stand up. Uh, there is no requirement in the law for waiving the one-year bar for minors. That was stated in the, uh, El Hemry case by the author of that opinion. It was taken from, apparently, the petitioner's brief in that case, which is on the Internet. The petitioner in that case did not bother to give a citation for that. What do we do with that? It's our case law. Well, I mean, it's our — we've already said there's no one-year bar for minors. The Court erred, Your Honor. There — I really — There's only three of us up here. I'm sorry? There's only three of us up here. I understand your position. Your position is that we set it. No citation of record. No citation of case. No analysis. We set it. You say, you can't do that. Well, in that case, the Board should have asked the full Court to look at it. But we're just a humble panel of three. Don't we have to follow that? Even if we disagree with it. Even if we say we always should cite authority or analysis. Does that give us a right not to follow? That the Court failed to cite the authority that was there. In this instance, there is no authority. Yeah, that's right. Now there is. And we're bound by it. So, I mean, I don't see how we're not bound. I respectfully — You can — I mean — Don't read it that way, Your Honor. I mean, if it's that easy — Well, that's very decisive, Mr. President. That's — it's not — it's not — you know, it has nothing to do with the merits of the of the other case. Did the government — Judge Huck's here. You can go down and complain to him. I'm sorry. Did the government seek rehearing in Bank and Elhamry? You may not know. I don't know, and it does not appear it did. Well, moving on. Oh, there's a critical distinction here between this minor and the minor petitioner in Elhamry that there's no comparison. In this case, the minor never asserted a claim of his own independently or through a parent. The parent's claim that he was hoping to be the beneficiary of solely pertained to themselves. It doesn't even mention the son. The son at the time of the events in question was one to 15 months old. The minor appeared at the hearing. He was 12 years old. He speaks English. He declined to testify. In Elhamry, the minor proffered his own application affirmatively. The mother filed hers. He filed his. Now, the claims, it's not important for the analysis. The claims overlap because what was the same in both was a group claim. The mother had the group claim plus some personal things of her own. The son had merely a group claim because of the treatment accorded Palestinians and Kuwait after the first Gulf War. May I stop you for a minute? Yes. I find this area a bit confusing and you might enlighten me. It doesn't appear that there are any standards for when a case is derivative and when it's not derivative except to the extent it's factually driven. Am I incorrect on that? For the most part, no, Your Honor. The reason is we've had other cases in which the question has been raised who gets notice, for example. And the argument in that case, I think, prevailed was everybody in the petition is entitled to notice because they had different claims. It was one petition. In that case, as in this case, the board used the phrase lead petitioner but appeared to have consolidated it for whatever reason. I was unable to find and it's not analogous here in this except to the extent of if I find it puzzling that there is no administrative way of when you file an application say this is derivative or it's independent. Am I correct on that? It doesn't appear to be on the form. It doesn't. The regulations require an applicant to the word is list. They make this distinction between list and include. You must list you're a biographical family. And you have the option. The question is right there below that or it's there on the first page or second page. It asks, do you include any of these immediate family members in your claim as derivative beneficiaries? But it doesn't say derivative, does it? Well, it doesn't use the word. But that's the problem is that and that's what was puzzling me in the other case. And it's analogous only here because it may be relevant to what the petition means. Because in that case, it seemed to be conceded that they, in fact, were filing separate claims and they just happened to be consolidated. You treated it as consolidated and not derivative. No, I'm not treating this one as consolidated at all. No, I know you're not. I'm talking about when I say you, I'm generically referring to the agency. So I gather to get back to your first answer, where we really are is to the extent to which a claim is derivative is fact driven and not form driven. Well, it has to be factual because it's at the election of the claimant. If the claimant, the parent in this instance, wish to include any of her family members within her claim, should she be accorded asylum? Well, I gather your answer is somewhat different. And maybe I'm just not putting my question well. I gather your position is that if it's not a derivative claim, you have to file separately. Is that what your position is? That or in some manner proffer your claim. So you think you can file jointly, but you have to indicate on the petition the distinctive nature of the claim? Well, I'm not going to quibble and say, oh, you know, even if you stepped forward at a hearing and said, yeah, I'm listed on there because I'm the child. But, you know, I've got something of my own to proffer here or a claim to make. I'm not going to say, oh, no, it doesn't count because you didn't file a piece of paper. No. You make your claim, you're there because your mother made a claim. In this case, this child and his mother never uttered a word in his behalf. No one did. And, in fact, what's most interesting is that in the Petitioner's opening brief at 7, he says there's no question that he would be made to suffer because of his parents' violation of the law. And then he says at 9, it is to explain why he didn't come forward whatsoever, even when asked to testify, it is doubtful that he would have been able to provide any testimony beyond what his parents provided to the record. I mean, how clear can it be, even in the opening brief, that he is only a beneficiary of someone else's claim? And I didn't really hear anything to date to contradict that. The government's position is sustained in this case. Am I correct that the mother and father would stay here and the 14-year-old son would be returned? I suspect that wouldn't happen. I suspect that they would knock on the agency's door and say, have a heart. And I can't imagine the agency forcibly returning anyone. Then really, why are we here? Why didn't you mediate this case? Well, we don't know what the status today of the parents is. The father refused to join his case with the mothers, which is a troubling matter. We don't know whether he was in deportation, exclusion, removal. We don't know. We don't know if and when either will get a status that would allow them to petition for the son. The fact that she has withholding is just a deference of her presence until things change. We don't know what the husband has gotten or will get. But what you're seeking here is the right to remove the son. Yes. Okay. We understand your argument. Thank you for coming in today. Rebuttal? We'll give you half a minute. How silly. Son, junior, go to your room and fill out an application and don't come out and no supper until you have it done. Mother, I don't know the big words. Hire a lawyer. It's just silly to say that he has to have a separate piece of paper. We have a harsh result for a procedural trip up. We're not going to separate the family. We have to come to you and ask for a redress because they wouldn't take care of it before. Thank you. Thank you. The case just argued will be submitted for decision. We'll proceed to the next case on the calendar, which is son.
judges: Wallace, Hawkins, Thomas